IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHELLE R. GOODWIN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. CIV-09-1404-R |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Before the Court are the Report and Recommendation of United States Magistrate Judge Doyle W. Argo entered November 3, 2010 [Doc. No. 24] and Plaintiff's Objections to the Report and Recommendation filed November 23, 2010. Doc. No. 25. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court reviews the Report and Recommendation *de novo* in light of Plaintiff's Objections.

In her first objection, Plaintiff asserts that the Magistrate Judge did not apply the correct legal standards in concluding that the Administrative Law Judge (ALJ) did not err under *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). In this regard, the Plaintiff had argued before the Magistrate Judge that the ALJ was improperly selective in discussing the findings of Dr. O'Keeffe in June 1998, Dr. Cruse in March 2001, Dr. Uhland in March 2001, Dr. Raju in April 2002, Dr. Fishkin in May 2003 and Dr. Edward in January 2005; and that the ALJ improperly failed to discuss "to any extent" Plaintiff's 1991 MRI, Dr. Smith's November 1998 findings, Dr. Riggs' March 2000 findings, assistant pastor and counselor Mr.

Page's March 2000 letter, Dr. Morgan's findings "at various times in 2000," and Dr. Tassey's findings from March and June 2005. Plaintiff asserts that the Magistrate Judge disregarded much of the same evidence as the ALJ, specifically disregarding Dr. O'Keeffe's June 1998 findings, Dr. Cruse's March 2001 findings, Dr. Uhland's March 2001 findings, Dr. Raju's April 2002 findings, Dr. Fishkin's May 2003 findings and Dr. Edward's January 2005 findings. In addition, she argues the Magistrate Judge, like the ALJ, disregarded Dr. Riggs' findings and Dr. Morgan's findings in 2000. Plaintiff argues that the Magistrate's conclusion that the ALJ incorporated one or more doctors' findings regarding functional limitations into the ALJ's RFC determination is not consistent with legal standards or with the evidence, Plaintiff contends the RFC for simple repetitive work and no public contact did not adequately account for Plaintiff's poor ability to cope with stress which would also affect her ability to interact with supervisors and coworkers and could be affected by factors such as the specificity of required tasks, time constraints or the level of supervision, which neither the ALJ nor the Magistrate Judge discussed in relation to the jobs identified that Plaintiff could perform. In this regard, Plaintiff states that the Magistrate Judge never discussed SSR 85-15, 1985 WL 56857 at * 6, and failed to address the fact that the Tenth Circuit has recognized a "distinction between limitations in the ability to tolerate work stress or pressures and those relating to skill level or social functioning," Objections at p. 12, *citing Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

Plaintiff initially alleged an inability to work since August 1, 1999 and at her first administrative hearing on June 1, 2006, amended her disability onset date to September 22,

2

2003. Tr. at 316-17. However, the ALJ in her decision treated August 1, 1999 as Plaintiff's disability onset date. Tr. at 364, 639. Plaintiff was last insured on December 31, 2004. Therefore, the ALJ had no obligation to consider or discuss the finding of Dr. O'Keeffe in June 1998; Plaintiff's 1991 lumbar MRI; Dr. Smith's November 1998 findings; Dr. Edward's findings in January 2005; or Dr. Massey's findings from March and June 2005. *See Morgan v. Astrue*, 302 Fed. Appx. 786, 788 (10th Cir. Dec. 10, 2008)(No. 08-7076). However, the ALJ nevertheless considered this evidence but because that medical evidence pertained to the period while Plaintiff was still working, prior to her disability onset or after she was last insured for disability, the ALJ considered it of "diminished probative value in addressing [the Plaintiff's] functional impairments during the relevant period." Tr. at 368. Moreover, the ALJ's failure to specifically discuss Dr. O'Keeffe's findings in June 1998 that Plaintiff had "some spasm in lower spine with decreased flexion and extension due to pain," Tr. at 215, was immaterial given the ALJ's consideration of Dr. O'Keeffe's opinion letter of March 17, 2000, in which he opined that the Plaintiff was 100% totally disabled, which the ALJ found to be of "minimal weight," considering that Dr. O'Keeffe's examination notes from March 16, 2000 contained no reference to signs, symptoms, laboratory findings or positive findings upon physical examination, let alone those consistent with unemployability or total disability, and given Dr. O'Keeffe's description of Plaintiff on June 25, 1998, as "healthy" and "in no distress" and that the only limitation he placed on the Plaintiff at the time was the inability to do "manual labor." *See* AR at 368-69.

Plaintiff faults the ALJ (and the Magistrate Judge) because the ALJ did not specifically reference the Plaintiff's expressed anxiety about finding Dr. Edward's office for a mental examination on January 18, 2005 and that Plaintiff appeared "older than her reported age" which the examiner attributed in part to the fact that the Plaintiff "wore bi-focal eyeglasses." Tr. at 191. These things were included in the "General Observations" section of the Report and were immaterial or subordinate to Dr. Edward's findings concerning Plaintiff's mental status which the ALJ discussed. Likewise, the facts that Dr. Edward, in describing the level of cooperation/attitude during the exam stated that Plaintiff "was guarded" and that at the beginning of the exam Plaintiff's facial expression was "anxious" but that at the end of it she "appeared less anxious" are insignificant. The ALJ reported Dr. Edward's findings concerning Plaintiff's mental status which were significant in determining Plaintiff's mental RFC. Although Plaintiff was "only able to successfully complete 8 of 16 [forward digit] trials," and "[o]f the backward digit span [trials], she was only able to complete 4 of 14 trials," Dr. Edward reported that Plaintiff's "ability to immediately recall verbally presented numerical information was good" and that her "immediate recall of verbally presented forward digit span" is "average." Tr. at 194. Hence, these findings were not contrary to the ALJ's express consideration of Dr. Edward's GAF of 60, reflecting moderate symptoms or moderate difficulty in social, occupational, or school functioning, *see* Tr. at 370, and the ALJ's limitation to "simple repetitive work with no public contact" in her RFC assessment more than adequately addressed Plaintiff's good to average memory. The observations or findings from 1998 and 2005 to which Plaintiff points as evidence which the

ALJ (and the Magistrate) disregarded are not "significantly probative evidence supporting . . . [Plaintiff's] allegations," when considered in context, upon which the ALJ chose not to rely. Accordingly, the ALJ did not err in failing to discuss them. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)(referring to the ALJ's failure "to discuss the significantly probative evidence supporting claimant's allegations upon which he chose not to rely."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)(ALJ must discuss the uncontroverted evidence he chooses not to rely upon and significantly probative evidence he rejects).

Plaintiff complains that the ALJ did not mention Dr. Cruse's "findings" of halting speech, tense posture and motor activity, depressed mood and anxious affect and the fact that Plaintiff was not taking Paxil because of the side effect of drowsiness. However, the ALJ did not reject these findings. "[A]n ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But the record must demonstrate that the ALJ considered all the evidence. *Id.* at 1009. The findings which Plaintiff contends the ALJ disregarded were consistent with and indeed incorporated in the consultative examiner's opinion which the ALJ expressly accepted: "In concluding, the consultative examiner opined that the claimant suffered no more than 'moderate' depression and anxiety which limit but not preclude her ability to make occupational, personal and social adjustments (Exhibit 8F)." Tr. at 369. The ALJ found that this assessment of limitations, which she accepted, would be adequately addressed by the limitation to simple repetitive work with no public contact or customer service in her RFC assessment.

5

Plaintiff next contends the ALJ disregarded Dr. Uhland's March 2001 finding of an ataxic gait, cervical and lumbar tenderness, and positive Spurling's testing with head compression reproducing neck pain. Objections at p. 5. Again, the ALJ was not required to discuss every finding or piece of evidence. Dr. Ulhand did note that the Plaintiff walked with a "slightly antalgic gait" but that it was "steady and safe," Tr. at 221, which the ALJ observed. Tr. at 369. The ALJ specifically noted Dr. Uhland's finding of "cervical [neck] pain" and that he also found such pain was "without radiculopathy" and "without sequelae." Tr. at 369. Dr. Uhland did not find lumbar tenderness, as Plaintiff suggests. In fact, Dr. Uhland stated in his report of March 24, 2001 that "[i]n her lumbar spine, the paramusculature is free of tenderness to palpitation and free of muscle spasm. She does have some tenderness to palpitation of her lumbosacral junction in the midline. She has no radicular pain." Tr. at 221-22. The ALJ fairly summarized and accepted Dr. Uhland's findings.

Plaintiff also complains that the ALJ disregarded Dr. Raju's April 2002 finding of "slow psychomotor activity, a depressed and anxious mood, tearfulness, diminished immediate memory and concentration, diminished insight, poor abstract thinking, and a GAF of 50." Objections at p. 5. Contrary to Plaintiff's contention, Dr. Raju found both Plaintiff's recent memory and her remote memory to be "good," Tr. at 260, as noted by the ALJ. The ALJ did not mention that Dr. Raju found Plaintiff's insight to be "nil" because "she does not know what her psychiatric problem is," Tr. at 260, *see* Tr. at 369, or that she had poor abstract thinking, Tr. at 260, but she did note that Dr. Raju found Plaintiff's judgment to be

6

"good," Tr. at 260, *see* Tr. at 369, judgment being more significant to the ability to work than insight into one's psychologic problem or abstract thinking. Plaintiff's tearfulness was not mentioned by the ALJ but Dr. Raju simply noted that Plaintiff was tearful while relating events that occurred while in the military and subsequent dreams about them. *See* Tr. at 259 & 260. The ALJ was not required to discuss this. The ALJ did not mention the other findings Plaintiff asserts that the ALJ did not discuss, which were not uncontroverted, but the ALJ did explain that she accorded Dr. Raju's conclusion that "she cannot handle a job because of her post traumatic stress disorder," Tr. at 261, "limited weight" because of other findings of Dr. Raju, listed by the ALJ, and because the only specific functional limitation which Dr. Raju found would impact Plaintiff's ability to work ("occupational functioning" according to Dr. Raju, Tr. at 261) was her impaired social and interpersonal functioning. *See* Tr. at 369. The ALJ discussed the significantly probative evidence in Dr. Raju's report and explained why she rejected it or gave it limited weight. Dr. Raju did not explain how he arrived at the GAF score of 50 for Plaintiff or how it impacted Plaintiff's functional abilities and, in any event, a GAF score "is not essential to the RFC's accuracy." *Atkinson v. Astrue*, 2010 WL 2977593 at *3 (10th Cir. July 29, 2010)(No. 09-1369)(*quoting Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th cir. 2002). Finally, the GAF score was not uncontroverted. *See* Tr. at 370 (consultative examiner's GAF score of 60).

Plaintiff also maintains that the ALJ improperly disregarded Dr. Fishkin's findings in May 2003 of "concentration problems, sadness and crying when discussing her stressors, fair to poor short term memory, partial eye contact, and being somewhat nervous with a GAF

7

of 49." Objections at p. 5. The ALJ accepted Dr. Fishkin's conclusion that Plaintiff's ability to work would be affected by her poor ability to cope with stress but found that the limitation to simple repetitive work and no public contact made in the RFC assessment would adequately address this. Tr. at 370. Dr. Fishkin's conclusion that Plaintiff's poor ability to cope with stress took into account Plaintiff's sadness and crying when discussing her stressors ("It is clear from her reactivity during the exam today when the issue of her stressors was raised . . . that her ability to cope with stress is poor . . . ." Tr. at 258). Findings that Plaintiff made partial eye contact and was somewhat nervous were not significantly probative of Plaintiff's mental impairments. And, given that the consultative examiner concluded that "[o]verall the vet's cognitive functioning appears within normal limits" and that Plaintiff had "no impairment of thought process or communication that would have a serious impact on her social functioning or work functioning," Tr. at 257, which the ALJ specifically noted, Tr. at 370, Dr. Fiskin's finding that there was "some indication of difficulty in concentrating, Tr. at 257, the fact that Plaintiff's performance on one 4-word recall test suggested fair to poor short-term memory functioning, Tr. at 275 and his unexplained GAF score of 49 were not significantly probative evidence that the ALJ was required to discuss.

The ALJ did not discuss the Veterans Administration medical records or the findings of Dr. Riggs and Dr. Morgan during 2000 that Plaintiff references in her Objections. *See* Objections at p. 6. But the ALJ is not required to discuss every piece of evidence, *Clifton v. Chater*, 79 F.3d at 1009-10, and this evidence was consistent with other evidence that the

8

ALJ discussed and accepted. It was neither uncontroverted evidence that the ALJ chose not to rely on or significantly probative evidence the ALJ rejected. *See id.* at 1010. The GAF scores provided by these doctors were unexplained as to how they were calculated or how they would impact Plaintiff's functional abilities. *See Atkinson v. Astrue*, 2010 WL 2977593 at * 3 (10th Cir. July 29, 2010)(No. 09-1369). Moreover, the GAF scores of these doctors do not alone establish an impairment serious enough to preclude work, *Holcomb v. Astrue*, 2010 WL 2881530 at * 2 (10th Cir. July 22, 2010)(*No. 09-5167)(*citing Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002) nor are they "essential to the RFC's accuracy." *Atkinson v. Astrue*, 2010 WL 2977593 at *3, *quoting Howard*, *supra*.

The Court agrees with the Magistrate Judge that the ALJ did not err in failing to discuss the letter from Assistant Pastor Kenneth R. Page dated March 31, 2000 (Tr. at 107). *See Leeper v. Chater*, 81 F.3d 172, 1996 WL 134930 at * 1 (10th Cir. Mar. 26, 1996)(No. 95-7079). Mr. Page did not set forth his qualifications nor did he indicate how frequently he counseled Plaintiff. The statements in his letter appear for the most part to be what Plaintiff, who requested that Mr. Page write the letter, told Mr. Page, as evidenced by the language used there ("She has expressed . . .," "She expresses . . . .") and by the fact that the statements are consistent with what Plaintiff told physicians, as reflected in their medical records. Information from persons other than approved medical sources may be considered to show the severity of an impairment or how it affects the claimant's ability to work, 20 C.F.R. § 416.913(d), but such information is not binding on the Commissioner, *Leeper v. Chater*,

134930 at * 3, and for it to even be considered, the information must be complete and detailed enough to enable the Commissioner to make a determination as to whether the claimant is disabled. *See* 20 C.F.R. § 416.913(e). Mr. Page's letter did not meet those requirements.

Plaintiff argues that the ALJ's RFC determination that Plaintiff was limited to simple repetitive work with no public contact did not adequately account for Dr. Fishkin's opinion as to Plaintiff's poor ability to cope with stress as well as Dr. Cruse's and the VA's findings of general social limitations. The VA's Rating Decision indicated that the Plaintiff's symptoms . . . caused significant impairment in . . . [Plaintiff's] occupational, social and interpersonal functioning." Tr. at 63. Dr. Cruse concluded that the Plaintiff's "depression and anxiety are moderate, thus limiting her ability to make adjustments occupationally, personally and socially." Tr. at 218. Dr. Fishkin stated that Plaintiff's "ability to cope with stress is poor, and it is very likely that any stress encountered on the job would render her quite dysfunctional by way of producing anxiety attacks and tearfulness and great discomfort." Tr. at 258. However, the PRTs and Mental Residual Functional Capacity Assessment in the record, performed by Department of Disability Services (state) physicians, which are designed to assess functional limitations, do not reflect an inability to cope with job stresses or interact with coworkers and supervisors. For example, the Mental Residual Functional Capacity Assessment dated May 2, 2001, by Sally Varghese, M.D. (Tr. at 236-39) does indicate that the Plaintiff is moderately limited in her ability to understand, remember and carry out detailed instructions but has no significant limitation in her abilities to

understand, remember and carry out very short and simple instructions, but indicates that the Plaintiff is not significantly limited in her ability to maintain attention and concentration for extended periods; in her ability to perform activities within a schedule, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, and complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. at 236-37. Likewise, although the assessment reflects that Plaintiff is moderately limited in her ability to interact appropriately with the public, the assessment indicates that the Plaintiff has no significant limitations in her ability to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers, without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behaviors and adhere to basic standards of neatness and cleanliness. Tr. at 237. Additionally, the assessment indicates that Plaintiff is not significantly limited in any of the adaptation abilities, including the ability to respond appropriately to changes in the work setting. Tr. at 237. The PRT completed by the same physician on the same date, evaluating Plaintiff for a possible Affective Disorder, Listing 12.04, found that Plaintiff was only moderately restricted in activities of daily living and had only moderate difficulty in maintaining social functioning and only mild difficulty in maintaining concentration, persistence or pace. Tr. 251. A PRT completed by Margaret McKinney, Ph.D., shortly after the date on which Plaintiff was last insured, on February 7,

2005, evaluated Plaintiff for a possible Affective Disorder or an Anxiety-Related Disorder, Listing 12.06. Tr. at 196-209. That psychologist found that Plaintiff had the medically determinable impairment of dysthymic disorder, Tr. at 1999, and had a history of "anxious symptoms," Tr. at 201, but found that Plaintiff had no functional limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace and that the Plaintiff had had no episodes of decompensation of extended duration.

Based upon the foregoing in conjunction with Dr. Fishkin's and Dr. Cruse's opinions and VA's Decision, the ALJ's RFC determination that Plaintiff was limited to simple, repetitive work and no public contact or customer service adequately addressed Plaintiff's abilities to cope with job stress and her moderate difficulties in social functioning. This case is distinguishable from *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007), cited by Plaintiff, because in that case, the ALJ inexplicably rejected four moderate restrictions on Plaintiff's mental RFC form concerning her ability to deal appropriately with supervisors and co-workers and respond appropriately to work place pressures and changes while adopting other restrictions from the RFC form. In this case, the ALJ's RFC determination was fully consistent with the mental RFC form and not inconsistent with the opinions of Doctors Fishkin and Cruse and the VA decision finding cited by Plaintiff.

In accordance with the foregoing, the Report and Recommendation of the Magistrate Judge is ADOPTED in its entirety and the decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Disability Insurance Benefits is AFFIRMED.

IT IS SO ORDERED this 16th day of December, 2010.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE